ELLIS *against* CRAIG and others.

Where money is lent, to be paid *at* or *on a certain day* specified, with interest, to be paid, in the mean time, at stated periods, the borrower cannot, by tendering the debt or principal, *before* the day stipulated for its payment, stop the interest ; for the *time* of payment, in such case, is part of the contract, and for the mutual benefit and convenience of both parties.

As, where the defendant, to secure the payment of a sum borrowed in 1818, executed a bond and mortgage, conditioned to pay the debt, *" on* the first day of *May*, 1825, with lawful interest, payable quarter-yearly," a *tender* of the principal and interest accrued, before the day stipulated, does not stop future interest ; for the obligee is not bound, according to the true intent and meaning of the contract, to receive the principal *before* the day.

ON a rehearing : The bill was filed *October* 30th, 1821, *January 6.* for the foreclosure of a mortgage, dated *July*, 1818, for securing the payment of a bond conditioned to pay 10,000 dollars, *on the first day of May*, 1825, with lawful interest, payable quarterly. The interest was regularly paid to the 1st of *August*, 1820. On the 25th of *August*, 1820, the mortgagors offered to pay the plaintiff the whole principal, with the interest, which the plaintiff refused to receive, alleging that she was not bound, according to the terms and condition of the bond and mortgage, to receive the principal before it was due and payable, that is, before the 1st of *May*, 1825. No interest was, afterwards, paid by the mortgagors, and the bill for foreclosure and sale, was filed for the payment of the interest which had accrued since the 1st of *August*, 1820.

*Bulkley*, for the plaintiff.

*Craig*, for the defendants.

THE CHANCELLOR. The condition of the bond was to pay the principal " on the first day of *May*, 1825," and

the interest quarter-yearly. The mortgagor repeatedly offered to pay the principal and interest, and the plaintiff refused to accept the principal as not being due, and demanded the arrears of interest, which were refused to be paid, unless the plaintiff would also accept the principal.

The material question upon which the parties are at issue, is, whether the defendant *C.* was entitled to pay the principal, and discharge the bond and mortgage, against the consent of the plaintiff, *before* the day of payment mentioned in the bond.

When the cause was argued the first time, it appeared to me that the weight of authority was in favour of the pretension of the defendant, and I thought myself bound to yield to that authority, against the dictates of my own judgment. The rehearing, and the second argument, were applied for, at my suggestion, to the end that a fuller research might be made, and a more mature consideration given to the case.

There can be no doubt that the parties *may,* by express stipulation, agree that a debt shall not be paid before a given time, and that until that time arrives, the debtor cannot tender the debt, and stop the interest. The question then occurs, what was the intention of the parties in this case, upon a fair and sound interpretation of the terms of the condition of this bond? The time of payment was made an essential part of the contract for the loan of the money. The terms of the bond were equally the agreement of both parties, and in which their mutual interest and convenience are presumed to have been consulted. A prolonged time of payment, when money is loaned upon interest, payable periodically, is not always given for the accommodation of the debtor. The time is intended to meet the will and the wishes of both parties; and in the case of persons who are unable to earn money by their own exertions, or to employ it themselves profitably in business, such as aged and infirm persons, women and infants, and

also in the case of literary and charitable institutions, a safe investment of money, with a prolonged time of payment of the principal, and short times of payment of the interest, is most likely to meet their views, and promote their welfare. The interest of money is liable to fluctuation, and money itself is a marketable commodity, and subject to a greater or less demand, according to the vicissitudes of trade and credit. These considerations may be supposed to have had a material influence upon the terms of the loan. We can hardly believe that both parties, in this case, had not equally in view their own convenience, in fixing upon a distant day of payment of the principal, or that it was the meaning of the contract that the obligor should be able on the next day, or the next month after the loan, to force back the money upon the plaintiff, and break up an advantageous investment. Why were the usual words, *or before,* omitted in the condition of the bond, but to show the intention of the parties, that the principal was not to be paid before the day specified in the condition.

The cases in the common law courts do not appear to have settled the question by any direct and definitive decision. I think, however, that the language of the books is against the defendant; and it would seem to be every where conceded, that in no case was a tender before the day good. If the condition of a bond be payable *on or before* such a day, a plea of payment before the day, to wit, on such a day, is good. (2 *Wils.* 173. *Anon.*) But if the condition of the bond be, payable *on such a day,* a plea of payment before the day is bad, and the defendant must either plead it by way of accord and satisfaction, or plead *solvit ad diem,* and prove payment before the day. (*Jernegan* v. *Harrison, Str.* 317. 2 *Wils.* 150. *Anon. Winch* v. *Pardon, Buller's N. P.* 174.) These cases turned upon the technical rules of pleading; and whatever subtleties exist on that subject, there can be no doubt that if money be tendered and *accepted* before the day appointed, it would,

when skilfully pleaded, amount to a discharge of the bond; "for if," as Lord *Coke* says, ( *Co. Litt.* 212. 6.) " the obligor pay a lesser sum before the day, and the obligee receive it, it is a satisfaction." The bearing of those cases upon the point now under discussion, consists, however, in the distinction which they assume between a bond payable *on* such a day, and *on or before* such a day, and in the doctrine which they necessarily convey, that it requires the assent and concurrence of the creditor to discharge before the day, a bond payable on a given day.

The language of Lord *Hardwicke*, as Chief Justice of the King's Bench, in *Tryon* v. *Carter*, (7 *Mod.* 231. *Str.* 994.) is still more explicit on the subject. The bond in that case was payable on or before the 5th of *December*, and payment was pleaded on that day. The case itself is not applicable, but the observations of the Chief Justice are much in point. " In the case," he observes, " of a bond conditioned for the payment *at a certain day*, or *upon such a day*, there can properly be no *legal payment* or *legal performance* of the condition till that day. Payment before the day may, indeed, be given in evidence on *solvit ad diem;* but that goes upon this reason, that the money is looked upon as a deposit in the hands of the obligee until the day comes, and then it is actual payment."

The argument in favour of the right of the obligor to pay before the day stipulated, is founded on the assumption of the fact, that the delay of the time of payment is introduced into the contract solely for the benefit of the debtor, and that he may waive a benefit, or renounce a time given on his account, according to the maxim, that, *Quisquis potest renuntiare jure pro se introducto.* But this is asking the concession of the very point in dispute. When a specific sum, without interest, is made payable at a distant day, or, perhaps, where the sum may be on interest, but the interest is not payable periodically in the intermediate time, there is colour for the construction that the time is given solely

for the accommodation of the debtor; and if I am not mista-   
ken, the doctrine contended for on the part of the defendant,
is founded entirely on that ground.   But where money is   
loaned upon interest, payable quarter yearly, and a distant
day is mentioned for the payment of the principal, the de-
lay is evidently as much for the benefit of the creditor as of
the debtor, and the loan itself most clearly implies it.   The
one party wants the principal to employ as capital in his
business, and the other party relies upon the enjoyment of a
portion of the profits of that capital, in the shape of interest
periodically paid, for his support and comfort.   These ca-
ses of loans upon interest are, therefore, cases of mutual
accommodation, and each party has an equal interest in the
preservation of the definite period of payment, and neither
can violate it, without a violation of the terms and intention
of the contract.

The case of *Talbot* v. *Braddill*, (1 *Vern.* 183. 394.) has
been relied upon as being favourable to the claim of the
defendant; but I think the case itself shows that the pro-
longed term of payment must have been intended for the
accommodation of the debtor.   The plaintiff there, in
1657, in consideration of £320, conveyed lands to the de-
fendant for 99 years, at a rent of 5s. *per annum*, and upon
condition, that if he should pay to the defendant £380, on
the 25th of *March*, 1688, the defendant should stand seised
to his use.   In 1680, the plaintiff filed his bill to redeem,
and it was contended against the right to redeem, that the
estate was not redeemable until 1688, and that as the one
side could not foreclose, the other ought not to redeem un-
til the period had elapsed.   To this it was answered, that
equity had always favoured redemptions, and that the rule
where one side could not redeem, the other cannot fore-
close, did not hold in all cases; for if one lends £100 upon
mortgage, with a promise to redeem on payment of £112
at the end of two years, there cannot be a foreclosure until
the end of two years; but if the mortgagee offers to pay the

£112 at the end of the first year, he shall be admitted to his redemption. The Lord Keeper thought it an unreasonable bargain, and decreed a redemption on payment of what should appear to be due, and he directed an account to be taken of the profits, which were to be credited to the plaintiff.

Neither the case itself, nor the example given upon the argument in it by way of illustration, seem to have any direct analogy to the present case; and the oppressive nature of the bargain, formed a material ingredient in the decision.

This question has been much discussed by the civilians, in their commentaries on the civil law. It is stated repeatedly in the *Digest*, that though a certain day be fixed for payment by the obligation, the debtor may pay before the day, though the creditor cannot sue before the day; because the whole intermediate time was given for the benefit of the debtor. (*Dig.* 45. 1. 38. 16. *Dig.* 45. 1. 137. 2. *Dig.* 46. 3. 70.) The civilians say, that the debtor can renounce this extent of time of payment established for his benefit, and can pay the creditor, though against his consent, before the day, unless it should appear that the day was appointed for the benefit of the creditor, and then it is admitted that the rule would be different. (*Hub. Prælec. de Verb. Oblig.* lib. 3. tit. 16. s. 2. *Heineccius, Elementa J. C. Secund. Ord. Pand. Opera*, tom. 5. part 2. 680. *Vinnius in Inst.* 3. 16. 2. s. 4.) This last concession of the civilians shows evidently, that the whole question depends upon the true construction of the contract; and whatever that construction may be, it will and ought to govern. It does not appear that the rule of the civil law was applied to the case of a debt *carrying interest*, payable at stated times within the period. It seems rather to have been applied to the case of a naked specific sum, payable at a given time; and in that instance, the delay was undoubtedly to be deemed for the benefit of the debtor, and he may waive a privilege exclusively his own. *Vinnius* was com-

menting upon an example given in the *Institutes*, of a promise to pay a given sum: *decem aureos primis calendis martiis dare spondes;* and none of the passages in support of the rule of the civil law, contain any allusion to the case of a loan upon interest.

I do not therefore consider the doctrine of the civil law as applicable to the case before me. The intention of the parties in the present contract cannot well be mistaken. The prolonged period of payment of the principal, and the periodical payments of the interest, were beneficial to both parties, and the day of payment was agreed on as meeting their joint wishes and convenience. If that be the sound interpretation of the condition of the bond, the principle of the civilians is in favour of the creditor, and the time of payment cannot be shortened without mutual consent.

It may be necessary, in some cases, to sell the whole mortgaged premises in one entire parcel, in order to raise money to pay the interest, or a portion of the principal. This is the case where the premises are not capable of being sold in parcels, or divided, without manifest injury to the subject, and to the parties concerned. The statute has provided for the case, (1 *N. R. L.* 490, 491.) by directing that *the court may apply the proceeds of the sale not only to the interest or principal in arrear, but to the whole or residue of the demand not due or payable, provided the same bears interest.* In this instance, the raising of the entire debt may become an unavoidable consequence of the sale; and the money coming into the hands of the Court, the creditor may be compelled to receive his principal before it is due. But this arises from the necessity of the case; and according to the construction which was given to the statute, in *Campbell* v. *Macomb*, (4 *Johns. Ch. Rep.* 534.) no more of the debt and interest is to be raised by a decree and sale, than what is actually due, when a necessity for selling the whole premises, in one entire parcel, does not exist.

1823.            I shall, accordingly, modify and correct the former de-
~~~~~~        cree, and direct, that the defendant, *C.*, pay the interest
St.ANDREW's
  CHURCH      due, and costs, (the costs of the first hearing and decree
     v.       excepted,) within thirty days, or that a requisite portion of
TOMPKINS.     the premises, and no more, be sold, to raise the same, with
──────        liberty to the plaintiff to apply for further directions, as
              future defaults occur, according to the *formula* given in
              *Brinckerhoff* v. *Thallhimer*, (2 *Johns. Ch. Rep.* 486.) and
              that the plaintiffs pay the costs of the appearance and an-
              swers of the two last defendants.

                                        Decree accordingly.